UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 13 |
| | Case No. 15-14094-MSH |
| DANIEL M. MORRISON AND JULIE MORRISON | |
| Debtors | |

**MEMORANDUM OF DECISION AND ORDER ON THE OBJECTION OF PAUL SERINO TO CONFIRMATION OF CHAPTER 13 PLAN**

Paul Serino, a creditor of the debtors, Daniel and Julie Morrison, has objected to confirmation of the Morrisons' chapter 13 plan on the basis that it fails to treat his claim as secured. The question at issue is, after Mr. Serino paid a debt on which both he and the Morrisons were guarantors, was Mr. Serino subrogated to the lender's position against the Morrisons, including the lender's third mortgage position on the Morrissons' home? The answer is a qualified yes.

*Background*

The material facts are undisputed. On January 17, 2008, Square Corner Café Corp. entered into a U.S. Small Business Administration loan with Business Lenders, LLC. Mr. Serino, Mr. Morrison and a third individual, Francis Aloca, who is extraneous to this dispute, were the principals of Square Corner. Each executed an unlimited guaranty of Square Corner's obligations to Business Lenders. The lender required security for the guarantees of Mr. Serino and Mr. Morrison. Mr. Serino secured his guarantee with a second mortgage on his home and Mr. Morrison did likewise, granting Business Lenders a mortgage (in his case in third position) on his home in Braintree, Massachusetts. In order to effectuate the granting of the Braintree mortgage, Ms. Morrision executed it as well. She also executed a guarantee of the Square Corner

obligation which was limited to her ownership interest in the Braintree property. This is sometimes referred to as a non-recourse guaranty.

At some point Square Corner defaulted on its obligations to Business Lenders and Business Lenders initiated collection efforts. Apparently, judging Mr. Serino to be the most promising target, Business Lenders pressed him hardest. Its intuition proved canny as Mr. Serino paid Business Lenders in full. Thereupon, Mr. Serino, asserting the status of Business Lender's sugrogee, sued Mr. Morrison in state court.

In response to Mr. Serino's lawsuit, on October 23, 2015, the Morrisons commenced this case by filing a joint voluntary petition for relief under chapter 13 of the Bankruptcy Code (11 U.S.C. § 101 et *seq.*). In their chapter 13 plan, the Morrisons propose to catch up on their payment arrearages to three creditors with liens on their Braintree home, Nationstar Mortgage Company, Rockland Federal Credit Union, and the Braintree Water and Sewer Department, and to pay their unsecured creditors a dividend of approximately 3.8% of their allowed claims. Payments are to be made over 60 months. Mr. Serino is included in the unsecured creditor class under the plan with an undisputed claim in the amount of $77,711.00.

Mr. Serino has objected to confirmation of the Morrisons' plan. He claims that by paying Business Lenders he is subrogated to the position of Business Lenders as holder of the Morrisons' guarantees secured by a third mortgage on their Braintree home and accordingly he must be treated as a secured creditor under their plan. He has also filed a proof of claim in this case asserting a claim of $70,711.03 secured by a mortgage on the Braintree property. In response to Mr. Serino's plan objection, the Morrisons maintain that the remedy of subrogation

2

is not available to Mr. Serino and that he is merely a general unsecured creditor with a claim for contribution as a co-guarantor.

*Analysis*

"In the context of a bankruptcy case, an entity's right of subrogation has been examined under either or both of two theories: 11 U.S.C. § 509 and state law doctrines of equitable subrogation." *In re Fiesole Trading Corp.*, 315 B.R. 198, 202 (Bankr. D. Mass. 2004).

Bankruptcy Code § 509 provides:

> (a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.
> (b) Such entity is not subrogated to the rights of such creditor to the extent that--
>> (1) a claim of such entity for reimbursement or contribution on account of such payment of such creditor's claim is--
>>> (A) allowed under section 502 of this title;
>>> (B) disallowed other than under section 502(e) of this title; or
>>> (C) subordinated under section 510 of this title; or
>> (2) as between the debtor and such entity, such entity received the consideration for the claim held by such creditor.
> (c) The court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, by way of subrogation under this section, or for reimbursement or contribution, of an entity that is liable with the debtor on, or that has secured, such creditor's claim, until such creditor's claim is paid in full, either through payments under this title or otherwise.

11 U.S.C. § 509.

As the court in *Friesole Trading* succinctly explained, "pursuant to the relevant provisions of § 509 an entity is entitled to subrogation if: (1) the entity is liable with the debtor on a claim against the debtor (§ 509(a)); (2) the entity has paid all or part of the claim (§ 509(a)); and (3) the entity did not receive the consideration for the claim (§ 509(b)). Furthermore, § 509(c) bars payment to an entity subrogated under § 509 until the creditor's claim has been paid in full." *In re Fiesole Trading Corp.*, 315 B.R. at 203.

3

Under Massachusetts law, to establish a claim for equitable subrogation a party must meet the following criteria:

> (1) the party seeking subrogation must have made the payment to protect his or her own interest; (2) the party seeking subrogation must not have acted as a volunteer in making the payment; (3) the party seeking subrogation must not have been primarily liable for the debt; (4) the party seeking subrogation must have paid off the entire debt; and (5) subrogation must not work injustice to the rights of others.

*E. Boston Sav. Bank v. Ogan*, 428 Mass. 327, 701 N.E.2d 331, 334 (1998).

There is disagreement among the courts over the interrelationship between equitable subrogation under state law and subrogation under Bankruptcy Code § 509, specifically "as to whether § 509 preempts any other form of subrogation theory, or whether equitable subrogation criteria are the test under § 509, or whether equitable subrogation is an alternative method to § 509." *In re Celotex Corp.*, 289 B.R. 460, 469 (Bankr. M.D. Fla. 2003) (citations omitted); *see also In re Fiesole Trading Corp.*, 315 B.R. at 203. Obviously, to the extent a subrogation claim satisfies both federal and state criteria it is not necessary to blaze a trail down any one of these specific paths. That is the situation here.

Regardless of which approach is employed, Mr. Serino is entitled to be subrogated to the claims of Business Lenders. *See In re Medicine Shoppe*, 210 B.R. 310, 314 (Bankr. N.D. Ill. 1997). Mr. Serino, an individual with secondary liability, satisfied Square Corner's debt to Business Lenders in its entirety – not merely as a volunteer, but to protect his own interest. The consideration for Business Lender's claim, namely the loan proceeds, were received not by Mr. Serino but by Square Corner. These undisputed facts support the conclusion that Mr. Serino enjoys subrogee status under both bankruptcy and Massachusetts law.

Having determined that Mr. Serino as subrogee may assert the claims of Business Lenders, the question arises, against whom may he assert those claims? The typical model in subrogation cases involves a guarantor's paying off a lender and then asserting subrogation claims against the primary obligor to recover the amounts paid. Here, however, Mr. Serino seeks to assert subrogation claims not against Square Corner but against his co-guarantors, the Morrisons.

There appear to be no Massachusetts cases, federal or state, that deal with the rights of a guarantor to proceed against a co-guarantor on the basis of subrogation. Commentators have made note of the lack of authority in this area. Peter A. Alces, *Restitution and subrogation—Subrogation—Subrogation right against other secondary obligors*, The Law of Suretyship and Guaranty § 6:30 (2015) ("There apparently were too few cosuety subrogation cases to draw upon. That does make it more difficult to 'restate' the law and suggests that as cases arise involving one secondary obligor's right to collateral pledged by another secondary [sic], the courts will not have a great deal to guide them.").

In *In re Wetzler*, 192 B.R. 109 (Bankr. D. Md. 1996) *aff'd sub nom. Wetzler v. Cantor*, 202 B.R. 573 (D. Md. 1996), the court allowed a guarantor to proceed on a theory of subrogation under state law against real property held by co-guarantors as tenants by the entirety. The *Wetzler* court relied on Restatement (First) of Security § 141, which provides the following:

> Where the duty of the principal to the creditor is fully satisfied, the surety to the extent that he has contributed to this satisfaction is subrogated
>
> ….
>
> (d) *to the rights of the creditor against cosureties* and *to the creditor's interest in security held by them*, but in such case the cosurety's personal liability is limited

>to the amount which will satisfy his duty to contribute his share of the principal's default.

Restatement (First) of Security § 141(d) (1941) (emphasis added); *see also Weitz v. Marram*, 366 A.2d 86 (Md. 1976).[1]

The same principle is articulated in Restatement (Third) of Suretyship & Guaranty § 28, which provides:

> (1) To the extent that the secondary obligor is subrogated to the rights of the obligee, the secondary obligor may enforce, for its benefit, the rights of the obligee as though the underlying obligation had not been satisfied
> ….
>> (b) *against any other secondary obligor for the same underlying obligation*, unless the other secondary obligor is a subsurety for the subrogated secondary obligor;
>>
>> (c) *against any interest in property securing either the obligation of the principal obligor or that of any other secondary obligor* against whom the rights of the obligee may be enforced.

Restatement (Third) of Suretyship & Guaranty § 28(1)(b) & (c) (1996) (emphasis added).[2]

I find the reasoning of *Wetzler* and the authority upon which it relies to be persuasive and will apply it in this case to permit Mr. Serino to assert his subrogation claim against the Morrisions and the property securing their guaranty for purposes of challenging confirmation of the Morrisons' chapter 13 plan. The amount of Mr. Serino's claim, however, is another matter entirely.

---

[1] "While the terms surety and guarantor are not identical, equitable subrogation applies to both." *In re Wetzler*, 192 B.R. at 114.

[2] Section § 28 of the Restatement (Third) of Suretyship & Guaranty "is derived from Restatement of Security § 141." Restatement (Third) of Suretyship & Guaranty § 28 (1996).

In determining the amount of a co-guarantor's liability to a subrogee, the Restatement (First) of Security § 141(d) as applied in *Weltzer* instructs that recovery pursuant to Restatement (Third) of Suretyship and Guaranty § 28(2) is limited in two ways. First, the guarantor's recovery "may not exceed [his] cost of performance of the secondary obligation." *Id.* at § 28(b)(1). Thus, Mr. Serino may recover up to the amount he paid Business Lenders in satisfaction of the debt and no more. Second, a guarantor's recovery against his co-guarantors and any interest in property securing the guarantee is "limited to the amount that will satisfy the cosurety's duty of contribution." *Id.* at § 28(b)(2). In other words, Mr. Serino's right to recovery is equal to the Morrisons' obligation to him under principles of contribution. *See Weitz*, 366 A.2d at 89. To those two limitations must be added a bankruptcy gloss– any secured claim may be subject to modification under applicable provisions of the Bankruptcy Code. The record before me is inadequate to permit any of these determinations. It does, however, support Mr. Serino's view that the current iteration of the Morrisons' chapter 13 plan is fatally flawed because it fails entirely to treat Mr. Serino's subrogation claim.

*Conclusion and Order*

The objection to confirmation of Paul Serino is sustained. The Morrisons are ordered to file an amended chapter 13 plan consistent with the rulings in this memorandum within 30 days.

August 2, 2016.                                                                              By the Court,

                                                                                             _____
                                                                                             Melvin S. Hoffman
                                                                                             U.S. Bankruptcy Judge

Counsel Appearing:    Joseph P. Foley, Esq.                      John C. Koslowsky, Esq.
                     Boston, MA                                  Milton, MA
                     for Daniel M. Morrison and Julie Morrison   for Paul Serino